IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–00800–PAB–KMT

MARK WALTER PAULSEN,

      Plaintiff,

v.

DOUG ROBERTS, Medical Monitor, Private Prison Monitoring Unit, CDOC,
JERRY STEELE, Private Prison Monitoring, CDOC,
RICHARD MADRID, Drug and Alcohol/Addiction Services, KCCC (Kit Carson Correctional Center),
PATRICIA HEADLEY, CAC III, Drug and Alcohol/Addiction Services, KCCC,
L. MORTIN-EARL, MA, CAC III, Drug and Alcohol/Addiction Services, KCCC,
DESIREE ANDREWS, Health Services Administrators, KCCC,
KATHY M. WILEY, NP, Health Care Provider, KCCC,
KAREN C. MITCHELL, NP, Health Care Provider, KCCC,
DAVID R. GROSS, PA, Health Care Provider, KCCC, and
SUSAN M. TIONA, MD, Facility Physician, KCCC,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendants Susan Tiona, Karen Mitchell, David

Gross, Richard Madrid, and Desiree Andrews' joint "Motion for Summary Judgment" (Doc.

163/157, ["CoreCivic Motion"], filed 10/18/2017).[1]  Plaintiff filed a document entitled

"Redress/Object to Summary Judgment for Defendants, Tiona, Mitchell, Gross, Madrid, and

---

[1] Docket number 157 represents the court approved level one restricted version of the CoreCivic Motion.

Andrews," and the court construes this as his response to the CoreCivic Motion. (Doc.180,

["Response to the CoreCivic Motion"], filed 12/7/2017.) Defendants replied. (Doc. 181,

["CoreCivic Reply"], filed 12/21/2017.

## STATEMENT OF THE CASE

Plaintiff is an inmate at Buena Vista Correctional Facility in Buena Vista, Colorado. (Doc

No. 10 ["Am. Compl."] at 2.) He was first diagnosed with Hepatitis C approximately twenty-five

years ago (Def. Ex. B. at 18:20-25), and he tested positive for the condition during the initial

diagnostic process upon entering the Colorado Department of Corrections (CDOC) in March

2011. (*Id.*at 6.)

In April 2011, Plaintiff was transferred to the Kit Carson Correctional Center (KCCC),

where he attempted to seek treatment for Hepatitis C. According to CDOC policy, however,

inmates with a history of drug or alcohol abuse must complete substance abuse treatment as a

prerequisite for Hepatitis C treatment. Plaintiff claims that although he actively sought substance

abuse treatment, he was unable to receive such treatment due to Defendants' failures. Further,

the delay in his substance abuse treatment caused delays in his Hepatitis C treatment, resulting in

what he contends to be a progression of severe degeneration of his liver and other complications.

(Am. Compl. at 6-7.) Plaintiff avers that Defendants should have treated his condition sooner and

that they hindered his access to the required drug treatment classes.

Thus, pursuant to 42 U.S.C. Section 1983, Plaintiff asserts Eighth Amendment and

Fourteenth Amendment claims against various KCCC and CDOC officials based on the failure

to provide adequate medical treatment of Plaintiff's Hepatitis C. (*Id.*at 9-13, 16.) Several of

2

Plaintiff's claims were dismissed previously by the Court (Doc. 72, ["Order Accepting

Magistrate Judge's Recommendation,"] filed 8/31/2016), leaving claims against Defendants

Susan Tiona, Karen Mitchell, David Gross, Richard Madrid, and Desiree Andrews (collectively

"CoreCivic Defendants"), and Defendant Doug Roberts.[2]

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). The moving party bears the initial burden of showing an absence of evidence to support

the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 105 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works,*

*Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at

325, 105 S. Ct. 2548). The nonmoving party may not rest solely on the allegations in the

pleadings, but must instead designate "specific facts showing that there is a genuine issue for

trial." *Celotex*, 477 U.S. at 324, 105 S. Ct. 2548; *see also* FED. R. CIV. P. 56(c). A disputed fact

is "material" if "under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the

---

[2] Defendant Roberts' filed a separate Motion for Summary Judgment, and the court addresses claims made against him separately. (*See* Doc. 166, filed 10/19/2017.)

3

nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 954, 30 L. Ed. 2d 652 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

Section 1983 provides a remedy for constitutional violations committed by state actors or by private actors under color of state law. *See* 42 U.S.C. § 1983. To establish a violation of Section 1983, a plaintiff must demonstrate that: (1) the defendant acted under color of state law

to deprive him of a right, and (2) the right of which the defendant deprived him was secured by the Constitution or the laws of the United States. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). Plaintiff alleges that the CoreCivic Defendants acted under color of state law to deprive him of his rights guaranteed by the Eighth Amendment and the due process clause of the Fourteenth Amendment, because they either completely deprived him of medical treatment or needlessly delayed the treatment causing damage to Plaintiff's health. (Am. Compl., generally.).

I.    **Eighth Amendment Claims against CoreCivic Medical Defendants**

To support a claim for under the Eighth Amendment for failure to provide medical care, a plaintiff must allege that the defendant committed "acts or omissions sufficiently harmful to evidence deliberate indifference to [the plaintiff's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). "Deliberate indifference" claims involve an objective and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is satisfied where the deprivation is "sufficiently serious." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). The deprivation is sufficiently serious if the medical condition complained of is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The subjective requirement is satisfied where the defendant acted "with a sufficiently culpable state of mind." *Oxendine*, 241 F.3d at 1276.

Namely, the defendant must have been aware of and yet "disregarded an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk." *Lopez v. LeMaster*, 172 F.3d 756, 761 (10th Cir. 1999); *Sealock*, 218 F.3d at 1209 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

The CoreCivic Defendants argue that Plaintiff has failed to come forth with evidence regarding his Section 1983 claims, and therefore summary judgment should be entered in their favor. Specifically, they argue that Defendant Tiona and Defendant Gross not only provided ample medical treatment, but also assisted in securing drug and alcohol treatment for Plaintiff so that he would qualify for requested medical treatment. Further, they posit that the claims against Defendant Mitchell are barred by the statute of limitations.

According to the record, Plaintiff first saw Defendant Tiona on July 21, 2011. At that point, the CDOC protocol, enacted in 2009, prioritized inmates for Hepatitis C treatment based on factors such as "drug and alcohol education, length of sentence remaining, laboratory findings, liver biopsy results, and presence of contraindications." (Def. Exh. B-1 at 2.) It required that inmates complete at least six months of substance abuse treatment prior to receiving Hepatitis C treatment.

According to Defendant Mitchell, Plaintiff began requesting Hepatitis C treatment in February 2012. (Def. Exh. B. at 96:7-15; Def. Exh. B-6; Def. Exh. E at ¶ 8.) Plaintiff was informed about the CDOC policy requiring drug and alcohol classes. (Def. Exh. B-13.) Thereafter, Plaintiff submitted a kite to prison staff requesting the same. The drug and alcohol addiction services team responded by informing Plaintiff that he did not qualify for drug and

alcohol treatment because his release date was too far out, as specified by the CDOC policy in effect. (Def. Exh. B at 110:11-20; Def. Exh. B-7.) Around two weeks later, Plaintiff met with Defendant Tiona, who noted that although she could not treat Plaintiff's Hepatitis C until he had received the drug and alcohol treatment, she would begin the treatment process by requesting Plaintiff's liver biopsy from 2010, by inquiring as to the mass on Plaintiff's liver, by ordering further testing, and by prescribing medication for Plaintiff's related itchy skin.

In March 2012, Plaintiff submitted a kite to Defendant Tiona, again requesting Hepatitis C treatment and explaining that he had received previous drug and alcohol treatment before his incarceration, although he did not complete it. A follow-up appointment was scheduled to discuss Plaintiff's test results and the prior treatment. (Def. Exh. B at 117:20-25, 118:1-21; Def. Exh. B-9, Def. Exh. 13.) At the follow-up appointment, Defendant Tiona discussed Plaintiff's lab results and reiterated that Plaintiff needed to actually complete a drug and alcohol treatment course before he could receive Hepatitis C treatment (Def. Exh 14.) Additionally, she told him that his SOA_R[3] score would need to be amended in order to be prioritized under the CDOC's policy for determining who received treatment. (Def. Exh. B at 122:1-25, 123:1-25, 124:1-7; Def. Exh. A at ¶ 11.) Defendant Tiona then ordered several tests, including an EKG and a chest x-ray as part of the Hepatitis C screening. (Def. Exh. A. at 13). The record is unclear regarding Plaintiff's attempts to receive treatment over the next year.

---

[3] "SOA_R" scores are derived from the CDOC's differential assessment for offenders, which evaluates factors such as prior drug use, education levels, family/social relationships, and criminal history.

In April of 2013, the CDOC Hepatitis C policy was changed. The revisions waived the requirement that the offender have a specific amount of time left before release in order to receive treatment. Also, inmates seeking Hepatitis C treatment were given priority for drug and alcohol assessment and placement in a program. On July 17, 2013, Patricia Headley, an "Addictions Treatment" employee within the prison, sent Plaintiff a memo explaining that his SOA_R score indicated that an interview must be conducted in order to determine treatment needs. Plaintiff was then evaluated and received a score of "4c." (Def. Exh. B at 157:18-25, 158:1-25, 159:1-16; Def. Exh. B-16; Exh. B-17.) After the SOA_R assessment was completed, Headley informed Plaintiff that, due to his score of "4c," Plaintiff could be placed in the next available substance abuse treatment group.

Plaintiff saw Defendant Tiona for the last time on October 20, 2013, when he expressed frustration over not being treated for Hepatitis C. (Def. Exh. B-19). Defendant Tiona noted in Plaintiff's file that Plaintiff was angry, and that he accused her of being a liar. (*Id*.) She noted that she "tried to explain to him that medical has no say in what his [substance abuse treatment] level is," and that she could not deviate from the CDOC policy. (*Id*.) However, Plaintiff expressed that he blamed Defendant Tiona for his inability to receive Hepatitis C treatment. (*Id*.)

In November 2013, Headley sent a memorandum to Plaintiff, alerting him that he could attend the next substance abuse treatment group, scheduled to begin in January of 2014. (Def. Exh. B-15 at 29.) The memorandum stated that "[p]er referral from the medical department a SOA_R assessment was completed to determine level of treatment." (Def. Exh. B-18.) In order to qualify for the treatment group, Plaintiff was required to attend a meeting with Headley on

January 8, 2014. (Def. Exh. B-15, at 29-30.) The memo also warned Plaintiff that nonattendance at the meeting could affect his ability to participate in the treatment class. Plaintiff is unaware of whether he met with Headley or not, but on February 19, 2014, Plaintiff had not begun drug and alcohol treatment. (Def. Exh. B at 173:19-25, 174:3-8; Def. Exh. D at ¶ 11).

On April 29, 2014, CDOC Medical Monitor Doug Roberts submitted a memorandum to Plaintiff, stating that, due to Plaintiff's SOA_R score of "4c," Plaintiff was required to attend Therapeutic Community substance abuse treatment, which was unavailable at KCCC. In order to facilitate treatment, Defendant Roberts changed Plaintiff's status to a "4b," which would qualify him for the type of substance abuse treatment available at KCCC. He informed Plaintiff that he would notify him regarding the treatment as soon as possible. Plaintiff's score was immediately amended to a "4b."

On May 13, 2014, Plaintiff was "reclassified," and in July, Plaintiff was transferred into the Therapeutic Community at BVCF, where he completed drug and alcohol treatment and, later, received Hepatitis C treatment. (Def. Exh. B-22.) Defendants assert that Plaintiff was reclassified in order to more quickly initiate substance abuse treatment, thereby quickening Plaintiff's access to Hepatitis C treatment.

The CoreCivic Defendants argue that the record reflects that ample care was given to Plaintiff, and thus, this case should be summarily adjudicated. In response, Plaintiff describes a "correspondence letter" that he received in November of 2017. Purportedly, the letter was from an unknown "medical director of liver transplantation unit" at the University of Colorado Hospital, and stated that Plaintiff had not been properly treated. The letter indicated that Plaintiff

improperly received only two months of medication, when he should have received three. Thus,

the doctor purportedly opined that Plaintiff might still suffer from Hepatitis C. However,

Plaintiff did not attach the letter to any pleading, and it is not in the record.

A. *Defendant Tiona*

Assuming that Plaintiff has established the first prong of the deliberate indifference

analysis, showing that his Hepatitis C is sufficiently serious, Plaintiff is also required to show

that Defendant Tiona intentionally delayed his medical care, ignoring a substantial risk of serious

harm. However, Plaintiff has failed to come forward with any evidence of his claims against

Defendant Tiona. Even though Plaintiff's allegations do show that Defendant Tiona was

involved in his medical treatment, and that he was unhappy with the treatment he received,

Plaintiff has not established that Defendant Tiona had any involvement in the delay in his ability

to attend substance abuse classes. "Personal participation is an essential allegation in a [section]

1983 claim," *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). Conversely, the record

indicates that Plaintiff was aware that he could not receive treatment for the Hepatitis C until he

received the required drug and alcohol treatment, a prerequisite that Defendant Tiona did not

control. (Def. Exh. B.-19.)

Furthermore, although there is some discrepancy between the two, both the 2009 and

2013 CDOC Hepatitis C treatment protocols specifically provide that inmates must discuss

movement to appropriate facilities with their case manager if the requisite substance abuse

program is not provided at their facility, not the medical staff. (Def. Ex. B-1, at 10.) Thus,

Plaintiff's claim that Defendant Tiona did not facilitate his movement to an appropriate facility

for treatment is also meritless, because Plaintiff cannot establish that Defendant Tiona had a duty to do so, whether imposed by the constitution or by policy. Accordingly, claims under the Eighth Amendment against Defendant Tiona should be dismissed, as Plaintiff has not presented evidence of a constitutional violation.

### B. *Defendant Gross*

Likewise, Defendant Gross argues that he provided ample medical care to Plaintiff. Plaintiff saw Defendant Gross on July 17, 2013, when Defendant Gross noted that Plaintiff had "problems with [the substance abuse] program." (Def. Exh. B-14.) Defendant Gross also noted in Plaintiff's file that a follow-up was needed, because Plaintiff would need a biopsy before being treated. Plaintiff received his first memo from Headley two weeks later. (*Id*.) Defendant Gross posits that he likely referred Plaintiff to the drug and alcohol team after following up on Plaintiff's case, as he suggested he would do in Plaintiff's file notations. (Def. Exh. D at ¶ 10.) Indeed, Headley's memorandum acknowledged that a referral from medical had been made. Furthermore, Defendant Gross argues that he likely attempted to assist with treatment before this point, but because the 2009 policy gave Plaintiff a low priority for treatment, his efforts were futile. (*Id*.)

Defendant Gross again saw Plaintiff on February 19, 2014, when he noted that Plaintiff had not begun drug and alcohol treatment. He recorded that there was mild activity in Plaintiff's liver profile, and warned that Plaintiff should start the drug and alcohol treatment immediately. He recorded that he would research what needed to be done further to assist Plaintiff with the drug and alcohol treatment. (*Id*.) Soon after, Plaintiff received the memorandum from Doug

11

Roberts, who told him that he would change his status to "4b" in order to facilitate entry into treatment. (Exh. B-21.)

Plaintiff's claims against Defendant Gross fail similarly to those against Defendant Tiona. Plaintiff has not come forward with evidence regarding the second prong of the deliberate indifference test, and has failed to establish causation. Plaintiff merely alleges that Defendant Gross "failed to take appropriate steps or initiate the progression of programs by informing the D&A services employees to take immediate action," and that he failed to have Plaintiff transferred to a different facility. Plaintiff relies on his own conclusory allegations, which do not create a genuine dispute of material fact in this case. *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000). Further, this conclusion is a blatant contradiction of the medical record evidence. On the other hand, Defendant Gross has shown that engaging further would have been in contravention of facility policy, and that Plaintiff was responsible for obtaining the drug and alcohol treatment independently of the medical staff. Therefore, Plaintiff's claims against Defendant Gross should be dismissed.

### C. *Defendant Mitchell*

Plaintiff met with Defendant Mitchell on three occasions for healthcare appointments. First, on February 16, 2012, Plaintiff met with Defendant Mitchell and told her about his desire to seek treatment for Hepatitis C. (Def. Exh. B at 96:7-15; Def. Exh. B-6.) On June 13, 2012, Plaintiff asked Defendant Mitchell about the treatment and was again informed about the 2009 CDOC protocol. (Def. Exh. B-11.) On June 30, 2012 Defendant Mitchell saw Plaintiff for the last time, and again evaluated him for treatment. On November 7, 2012, she ordered a thyroid

stimulating hormone test, though there is no record that she met with Plaintiff at that time. (Def.

Exh. E., Attach. 3.) Defendant Mitchell ceased her employment at KCCC in January 2013. Thus,

Defendant Mitchell argues that claims against her are barred by the relevant statute of

limitations, because Plaintiff filed suit on April 15, 2015, over two years after her employment

with KCCC had ended.

"Limitations periods in § 1983 suits are to be determined by reference to the appropriate

state statute of limitations . . . ." *Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 104 L. Ed.

2d 582 (1989); *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993). Colorado law provides

a two-year statute of limitations for actions brought under section 1983. *See* COLO. REV. STAT. §

13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by

federal statute where no period of limitation in said federal statute" and for "all other actions of

every kind for which no other period of limitation is provided"); *Fogle v. Pierson*, 435 F.3d

1252, 1258 (10th Cir. 2006) ("We have made clear that the statute of limitations for §

1983 actions brought in Colorado is two years from the time the cause of action accrued").

While Plaintiff seemingly accepts that Defendant Mitchell ended her employment with

KCCC over two years before his claims were filed, he asserts that "the normal statute of

limitations does not apply," because he suffered an "ongoing violation." Plaintiff urges the court

to apply the continuing violation doctrine to his claims by citing to *Hunt v. Bennett*, 17 F.3d

1263, 1266 (10th Cir. 1994), which discussed the continuing violation doctrine in the context of

prisoner civil rights claims, describing the doctrine as one that typically "permits a Title VII

plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if

13

such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." *Id.* (citing *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987)). However, the *Hunt* Court held that a plaintiff's claims would be barred unless there was evidence of a conspiracy. Because the Plaintiff in *Hunt* did not have such evidence, the Court did not apply the doctrine. *Id*. Similarly, Plaintiff has brought forth no facts showing agreement or concerted action indicating conspiracy among Defendants.

Indeed, federal law governs the question of accrual of federal causes of action, and thus, dictates when the statute of limitations begins to run for purposes of Section 1983. *See Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995); *Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). Accordingly, "such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994)). Given Defendant Mitchell's departure over two years prior to Plaintiff's suit, even assuming Defendant Mitchell violated Plaintiff's constitutional rights, Plaintiff's claims could not have accrued within the limitations period. Accordingly, claims against Defendant Mitchell should be dismissed.

## II.     Due Process Claims Against CoreCivic Medical Defendants

Plaintiff also claims that the CoreCivic Defendants violated his Fourteenth Amendment procedural due process rights by failing to comply with CDOC protocol. Plaintiff's Response argues that simply evaluating the need for treatment of his Hepatitis C, without more, contravenes CDOC protocol for "clinical standard and procedure." (Response to the CoreCivic

14

Motion at 7.) Further, he argues that the CDOC policy requires the "chief medical officer of clinical services" to be responsible for the "development and maintenance of procedures for medical levels of services." Citing to CDOC AR-700-02," Plaintiff claims that Defendants failed to follow or implement "specific procedures" to provide certain unspecified services, causing a failure of the medical team to ensure the "basic health and prevention of health deterioration" of inmates such as himself. (*Id.*)

"[L]iberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quotation omitted). However, "[t]he Due Process Clause standing alone offers prisoners only a narrow range of protected liberty interests,'" *Id.*(quotation omitted). Although states may create liberty interests protected by due process in certain contexts within the prison system, they generally will be limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

Courts generally construe prison inmates' procedural due process rights narrowly. Here, even assuming that Plaintiff could establish that the CDOC policy conferred a liberty interest, he did not provide evidence within the record indicating Defendants' failure to follow the CDOC policy. In fact, he failed to provide the court with excerpts from the specific policy to which he refers. Furthermore, after an independent review of the record, the court finds that there is simply no evidence of the same.

Conversely, Defendants provided copies of the CDOC's 2009 clinical standards and procedures relevant to inmates who suffer from Hepatitis C. (Def. Exh. B-1.) The policy required that offenders enroll in and complete six months of substance abuse education prior to liver biopsy. (*Id*. at 10.) The policy also required that the provider refer inmates to the mental health department, and such action should be reflected in the inmate's chart. (*Id*.) However, the offender is then responsible for contacting mental health and/or their case manager to have appropriate documentation submitted to clinical services. (*Id*.) Importantly, before receiving treatment, candidates must also have an absence of decompensated cirrhosis, which would be evidenced by "significantly poor liver function." (*Id*.)

As the court previously found, Defendants Tiona, Gross, and Mitchell continued to monitor Plaintiff's condition while repeating that he could not receive the requested type of treatment until he had completed drug and alcohol classes, pursuant to the policy. Further, Plaintiff's medical charts indicate a fear by the medical staff that Plaintiff's liver was too unhealthy to qualify for treatment, further explaining delay. (*see*, *e.g*. Def. Exh. B-6 & B-11.) While there does not seem to be notation of referral to the mental health department in Plaintiff's file, the mental health department was communicating with Plaintiff as soon as two weeks after Defendant Gross noted that he would follow up on Plaintiff's treatment. (Def. Exh. B-15, at 28.) Even in considering a possible failure to notate such action, Plaintiff has not shown that such failure was deliberate or due to more than mere negligence, as required by Section 1983. *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (analyzing *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (Negligent conduct in a prison setting does not

implicate the due process clause of the Fourteenth Amendment so as to afford section 1983

relief)). Plaintiff has simply failed to produce evidence that these Defendants did not follow

policy, and his due process claims against them should be dismissed.

### III.    Due Process Claims Against Madrid and Andrews

Plaintiff's due process claims against Defendants Madrid and Andrews focus on the

memo Plaintiff received from Doug Roberts, indicating that Plaintiff's SOA_R status would be

changed from a "4c" to a "4b" and notifying staff regarding Plaintiff's treatment needs. In the

memorandum, Defendant Roberts also specified that Defendants Andrews and Madrid would be

copied (or "CC'd").[4]

During his deposition, when asked if he had ever seen or spoken with Defendant Madrid,

Plaintiff said that he could not remember. When asked whether he had any evidence that

Defendant Madrid personally participated in any decision related to his drug and alcohol

treatment, Plaintiff answered "[n]ot at the this time." When further prompted, Plaintiff stated that

he would need to do further "research on it," and that it was possible that Plaintiff listed

Defendant Madrid merely in his supervisory capacity. Plaintiff provided similar answers when

asked about Defendant Andrews. Further, Plaintiff testified that he had no evidence or

knowledge that either Andrews or Madrid had any involvement in any decisions related to his

treatment, or that they created policy related to hepatitis treatment.

---

[4] This court previously found Plaintiff's Eighth Amendment claims against these Defendants to be futile, but found that Plaintiff's due process allegations were potentially viable. (Doc. No. 71, Recommendation Granting in part and Denying in Part Defendants' Motion to Dismiss; Doc. No. 72, Order Accepting Recommendation.)

17

"Supervisors are only liable under Section 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006). To establish supervisor liability under Section 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, ... the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Jenkins v. Wood*, 81 F.3d 988, 994–95 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). The only link between Plaintiff's alleged deprivation and their conduct is Plaintiff's conclusory and unsubstantiated allegation that they failed to investigate Plaintiff's complaints about being denied access to policy required substance abuse program classes.

As Plaintiff has not come forward with any other evidence than the accusations and conclusory allegations made during his deposition, his claims must fail. Plaintiff has failed to establish that Defendants Madrid and Andrews took any part in the Plaintiff's alleged plight. Thus, claims against Defendants Madrid and Andrews should be dismissed.

## CONCLUSION

Plaintiff's conclusory allegations against Defendants are unsubstantiated by the record, and he has failed to bring forth evidence of deviation from CDOC policy, or evidence indicating a lack of sufficient medical care. Accordingly, his Eighth Amendment and Fourteenth Amendment claims should be dismissed. Finally, as the docketing of this order results in a final disposition of this matter, the court recommends that Plaintiff's Motion for Status Update (Doc. 202, filed 7/02/2018) be denied as moot.

18

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants Tiona, Gross, Mitchell, Madrid, and Andrews' Motion

for Summary Judgment be GRANTED. Further, I respectfully

RECOMMEND that Defendant Roberts' Motion for Summary Judgment be GRANTED

as well. Finally, due to the recommended dismissals, I respectfully

RECOMMEND that all other motions submitted by the Plaintiff be denied as moot.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

19

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this the 17th day of July, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge