IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-0800-PAB-KMT

MARK WALTER PAULSEN,

    Plaintiff,

v.

DOUG ROBERTS, Medical Monitor, Private Prison Monitoring Unit, CDOC,
JERRY STEELE, Private Prison Monitoring Unit, CDOC,
RICHARD MADRID, Drug and Alcohol/Addiction Services, KCCC (Kit Carson Correctional Center),
PATRICIA HEADLEY, CAC III, Drug and Alcohol/Addiction Services, KCCC,
L. MORTIN-EARL, MA, CAC III, Drug and Alcohol/Addiction Services, KCCC,
DESIREE ANDREWS, Health Services Administrator, KCCC,
KATHY M. WILEY, NP, Health Care Provider, KCCC,
KAREN C. MITCHELL, NP, Health Care Provider, KCCC,
DAVID R. GROSS, PA, Health Care Provider, KCCC, and
SUSAN M. TIONA, MD, Facility Physician, KCCC,

    Defendants.

---

# ORDER

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "First Recommendation") [Docket No. 204] filed on July 17, 2018, the Recommendation of United States Magistrate Judge (the "Second Recommendation") [Docket No. 205] filed on July 19, 2018. In the First Recommendation, Magistrate Judge Kathleen M. Tafoya recommends that the Motion for Summary Judgment filed by defendants Susan Tiona, Karen Mitchell, David Gross, Richard Madrid, and Desiree Andrews [Docket No. 157] be granted. Docket No. 204 at 19. In the Second Recommendation, the magistrate judge recommends that the Motion

for Summary Judgment [Docket No. 166] filed by defendant Doug Roberts be granted. Docket No. 205 at 11. Plaintiff filed a timely objection, objecting only to the Second Recommendation. Docket No. 206. Also before the Court is Plaintiff's Objection to U.S. Magistrate Judge's Recommendation for Summary Judgment for Defendant(s) Steele, Headley, L. Mortin-Earl and Wiley [Docket No. 214], which the Court construes as a response to its September 4, 2018 Order to Show Cause. *See* Docket No. 209. Finally, the Court takes up Plaintiff's Rebuttal to Defendants [sic] Objections/Responses to Plaintiff's Request for Production of Documents [Docket No. 200], Plaintiff's Objection to Defendants [sic] Protective Order Regarding Plaintiff's Production of Documents [Docket No. 201], and plaintiff's Motion for Review of Plaintiff's Rebuttal to Defendants [sic] Objection to Plaintiff's Request for Production of Documents (P.O.D.) on 03/23/2018, Also Plaintiff's Objection to Defendants [sic] Protective Order Regarding His Production of Documents Motion on 03/23/2018 [Docket No. 211]. In these filings, plaintiff challenges the magistrate judge's February 23, 2018 Protective Order [Docket Nos. 189-190], which states that defendants were not required to respond to plaintiff's January 18, 2018 discovery requests [Docket No. 185], and requests a decision on his challenges. *See* Docket No. 211. In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

I. **BACKGROUND**

Plaintiff Mark Walter Paulsen is an inmate in the Colorado Department of Corrections ("CDOC"). Movant's Statment of Material Facts ("MSMF") 1; Docket No

166 at 1, ¶ 1. On March 17, 2011, during the CDOC intake process, plaintiff tested positive for the hepatitis C virus ("HCV"), genotype 1. MSMF 1. After intake, on April 6, 2011, plaintiff was assigned to Kit Carson Correctional Facility ("Kit Carson"). MSMF 6; *see also* Docket No. 179 at 1-2, ¶ 6. Kit Carson is a private prison that houses inmates for the CDOC. MSMF 1. Plaintiff sought treatment for HCV; however, under the CDOC's HCV treatment policy in force at that time, plaintiff was ineligible to begin HCV treatment because of the time remaining on his sentence. Docket No. 205 at 2; *see also* Docket No. 179 at 2, ¶ 6.[1] In April 2013, the CDOC revised its HCV treatment policy, removing the requirement that inmates have a specific amount of time remaining on their sentence in order to be eligible for treatment. Docket No. 166-1 at 7, ¶ 3. Despite this change, inmates were still required to complete drug and alcohol programs depending on their substance abuse level classification before receiving HCV treatment. *Id*. An inmate's substance abuse level was determined by the CDOC based on an inmate's background of substance abuse and other factors. See Docket No. 157 at 3-4, ¶ 14 and at 9, ¶ 59; MSMF 6, 27.

In 2014, Mr. Roberts was an employee of the Private Prison Monitoring Unit ("PPMU") of the CDOC. MSMF 19. He was a medical monitor, responsible for monitoring the provision of medical services within private prisons, including Kit Carson, to ensure that the private prisons' policies were in compliance with CDOC policies. MSMF 21-22. On April 29, 2014, Mr. Roberts sent a memorandum to plaintiff (the "April

---

[1] Plaintiff argues that this policy itself constituted a constitutional violation, Docket No. 179 at 8, but plaintiff does not object to the Second Recommendation on that basis and there is nothing in the record indicating that Mr. Roberts had a role in formulating the policy. *See* Docket No. 206 at 2.

2014 Memorandum"), stating that Mr. Roberts reviewed plaintiff's case with Dennis O'Neil, Out-Patient Clinical Supervisor, who told him that plaintiff was classified as "level 4c." MSMF 26; Docket No. 166-2 at 4; *see also* Docket No. 157 at 10, ¶ 64 (record from August 2, 2013 indicating that plaintiff was scored substance abuse level 4c). Under the CODC's HCV treatment policy, an inmate at level 4c must complete an intensive drug and alcohol "Therapeutic Community" program prior to receiving HCV treatment. MSMF 27; Docket No. 166-1 at 7. A Therapeutic Community program was not available at Kit Carson, but Mr. Roberts' memorandum stated that plaintiff could "attend level 4b at [Kit Carson], which will make you eligible for Hepatitis treatment." Docket No. 166-2 at 4; MSMF 27. Plaintiff states that, in spite of Mr. Roberts' memorandum, plaintiff was denied level 4b treatment "because he was over qualified." Docket No. 179 at 6, ¶ 28.

In July, 2014, plaintiff was transferred to the CDOC's Buena Vista Correctional Facility ("Buena Vista") where he was placed in its Therapeutic Community program, after which he began receiving HCV treatment. Docket No. 205 at 3 (citing Docket No. 158-1).

On April 15, 2015, plaintiff filed his complaint in this case. Docket No. 1. He brings claims against Mr. Roberts pursuant to 42 U.S.C. § 1983 under the Eighth Amendment and Fourteenth Amendment. Docket No. 205 at 4; *see also* Docket Nos. 10, 72.[2] On October 18, 2017, defendants Desiree Andrews, David R. Gross, Richard

---

[2] Plaintiff has filed another case bringing claims related to the provision of his HCV treatment at Buena Vista. *Paulsen v. Booth*, No. 16-cv-00129-PAB-KMT (D. Colo. filed Jan. 19, 2016).

4

Madrid, Karen C. Mitchell, and Susan M. Tiona (collectively, the "medical defendants") filed their motion for summary judgment. Docket No. 157. The next day, Mr. Roberts filed his motion for summary judgment. Docket No. 166. On January 18, 2018, after the summary judgment motions were fully briefed and more than four months after the close of discovery, plaintiff filed discovery requests. Docket No. 185; *see also* Docket No. 113 (" The Discovery Cut-Off is 8/4/17."). On February 20, 2018, defendants moved for a protective order excusing any response to the discovery requests on the basis that they were untimely. Docket No. 187. On February 23, 2018, the magistrate judge entered the requested protective order. Docket Nos. 189, 190. On March 28, 2018, plaintiff filed his rebuttal and objection to the protective order, which were dated March 23, 2018, and which the Court will construe as objections to the protective order. Docket Nos. 200, 201. On July 17 and 19, 2018, the magistrate judge issued her Recommendations that the motions for summary judgment be granted. Docket Nos. 204, 205. On August 6, 2018, plaintiff filed his objection to the Second Recommendation. Docket No. 206. On September 4, 2018, the Court ordered plaintiff to show cause "why his claims against defendants Jerry Steele, Patricia Headley, L. Mortin-Earl, and Kathy M. Wiley, NP, should not be dismissed for failure to serve pursuant to Fed. R. Civ. P. 4(m)." Docket No. 209 at 2. On September 10, 2018, plaintiff filed his motion for review. Docket No. 211. On September 14, 2018, plaintiff filed an "Objection" discussing his allegations against defendants Jerry Steele, Patricia Headley, L. Mortin-Earl, and Kathy M. Wiley (collectively, the "unserved defendants"), which the Court construes as a response to its September 4, 2018 order to show cause regarding the unserved defendants.

## II. STANDARDS OF REVIEW

For magistrate judge orders on non-dispositive matters, the Court must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). For dispositive motions, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To be sufficiently specific, an objection must "enable[] the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *See id.* at 1059 (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas*, 474 U.S. at 150 ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; see Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d

567, 569 (10th Cir. 1994).

## III. ANALYSIS

### A. First Recommendation

Plaintiff has not filed an objection to the First Recommendation. *See* Docket No. 206 at 1. Accordingly, the Court has reviewed the First Recommendation to satisfy itself that there is "no clear error on the face of the record."[3] Fed. R. Civ. P. 72(b), Advisory Committee Notes. The Court finds no clear error with respect to Magistrate Judge Tafoya's recommendation that the medical defendants' motion for summary judgment be granted. Plaintiff has not shown that there is a genuine issue of material fact that the medical defendants violated plaintiff's constitutional rights. The Court will therefore grant the motion for summary judgment [Docket No. 163] filed by the medical defendants. The magistrate judge recommends that plaintiff's other pending motions be denied as moot. Docket No. 204 at 19. Because, as discussed below, this order resolves all plaintiff's claims, the Court will also accept the magistrate judge's recommendation that plaintiff's other motions be denied as moot.

### B. Second Recommendation

Plaintiff objects to the dismissal of both his Eighth Amendment claim for deliberate indifference to his serious medical needs and his Fourteenth Amendment claim for violation of his due process rights against Mr. Roberts. Docket No. 206 at 1, 5.

---

[3] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

8

### *1. Deliberate Indifference Claim*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The Eighth Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199 (1989))). "The analysis [of an Eighth Amendment claim] should not be based on 'a court's idea of how best to operate a detention facility,'" but should reflect "the evolving standards of decency that mark the progress of a maturing society," which the Tenth Circuit has characterized as a "lofty standard." *DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981)). To prevail on his claim that a defendant violated the Eighth Amendment, plaintiff must show that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) the defendant was subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Plaintiff devotes a significant portion of his objection to arguing that his health has been significantly harmed by the progression of his HCV while he was awaiting treatment. *See, e.g.*, Docket No. 206 at 1. This information is relevant to the objective prong of the deliberate indifference inquiry, but not the subjective prong on which the magistrate judge based her recommendation. *See* Docket No. 205 at 7. The Court

9

assumes that plaintiff's HCV constitutes a substantial risk to his health and limits its discussion to whether plaintiff has shown a genuine issue of material fact under the subjective prong. Under this prong, an action or inaction unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment. *Farmer*, 511 U.S. at 837-38. The Eighth Amendment does not reach a prison official's conduct unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Verdecia v. Adams*, 327 F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)). A prisoner must therefore establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (quotations omitted). A court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Farmer*, 511 U.S. 842 (noting that state of mind can be established with circumstantial evidence and "from the very fact that the risk was obvious"). The negligent conduct of a prison official is, in all cases, insufficient to rise to the level of deliberate indifference. *Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack

of due care for the prisoner's interests or safety" (quotations omitted)). Thus, to succeed under the subjective prong, plaintiff must show not only that Mr. Roberts was aware of the risk to plaintiff's health, but also that Mr. Roberts disregarded that risk. *Id.* at 837; *Mata v. Saiz*, 427 F.3d 745, 760 (10th Cir. 2005).

Plaintiff argues that Mr. Roberts was deliberately indifferent in failing to enforce CDOC policies that would have allowed plaintiff to be placed in HCV treatment earlier. Docket No. 206 at 2. While it is clear from the summary judgment record that plaintiff's medical providers were aware of his HCV and desire for treatment before 2014, plaintiff presents no evidence that Mr. Roberts was aware of plaintiff's HCV diagnosis prior to the events leading to the April 2014 Memorandum. *See* Docket No. 179 at 4-6; Docket No. 180. Further, there is no evidence in the summary judgment record to support an inference that Mr. Roberts delayed preparing the April 2014 Memorandum after he became that plaintiff needed treatment and could receive treatment under CDOC's revised policy. *See* Docket No. 179 at 4-6; Docket No. 180. As the magistrate judge found, the April 2014 Memorandum constituted an attempt by Mr. Roberts to reclassify plaintiff in such a way as to allow plaintiff, consistent with CDOC policy, to enter drug and alcohol courses at Kit Carson that would make him eligible to receive HCV treatment. Docket No. 205 at 7. Plaintiff ultimately did not attend such classes at Kit Carson, but only because he was, instead, transferred to the Therapeutic Community at Buena Vista, completion of which allowed him to receive HCV treatment. *Id.*; *see Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("The Supreme Court cautioned that 'an inadvertent failure to provide adequate medical care' does not rise to

11

a constitutional violation." (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976))). Plaintiff's bare assertion, without supporting evidence, that Mr. Roberts' inaction led to a treatment delay does not create a genuine issue of material fact that Mr. Roberts was deliberately indifferent, particularly where, as here, the defendant took affirmative steps to see that plaintiff received treatment. *See Celotex,* 477 U.S. at 324*; Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *Beggs*, 563 F.3d at 1089 ("Finally, the subjective component requires the prison official to disregard the risk of harm claimed by the prisoner."). Therefore, the Court finds that plaintiff has not shown a genuine issue of material fact that Mr. Roberts was deliberately indifferent and will accept the recommendation that summary judgment enter on plaintiff's claim that Mr. Roberts was deliberately indifferent.

## 2. Due Process Claim

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV*; see also Estate of DiMarco v. Wyo. Dep't of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007). While the Fourteenth Amendment due process guarantee applies to prison inmates, "their due process rights are defined more narrowly." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). In the prison context, the Supreme Court has established that protected liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilson*, 430 F.3d at 1117 ("a prisoner is entitled to due process before he is subjected to conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, or disciplinary actions that inevitably affect the duration of his sentence.") (internal quotation marks and citation omitted). "In determining whether an individual has been deprived of his [Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted). "The burden of proof as to both prongs is squarely on" plaintiff. *McClary v. Kelly*, 4 F. Supp. 2d 195, 202 (W.D.N.Y. 1998); *see also Dantzler v. Beard*, 2007 WL 5018184, at *2 n.1, *6 (W.D. Pa. Dec. 6, 2007) (plaintiff has burden of establishing protected interest exists). Further, "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco*, 473 F.3d at 1342.

"A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). "To determine whether a plaintiff was denied procedural due process, [the Court] engage[s] in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the

individual afforded an appropriate level of process?" *Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J*, 464 F.3d 1182, 1189 (10th Cir. 2006) (quoting *Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005)). "[L]iberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (internal quotation marks omitted). If a prisoner claims that a prison official has interfered with a liberty interest created by prison regulations, the Court must determine if those regulations "employ 'explicitly mandatory language' and 'specific substantive predicates' in a manner sufficient to create a protected interest." *Abbott*, 13 F.3d at 1443.

Plaintiff argues that Mr. Roberts violated his due process rights by failing to ensure compliance with CDOC's treatment protocols for HCV. Docket No. 206 at 5. In particular, plaintiff argues that Mr. Roberts failed to ensure that he had access to the prerequisite drug and alcohol program when he was eligible and that tests called for by CDOC's HCV treatment protocol were carried out. *Id*.

With respect to plaintiff's access to the drug and alcohol program, the Court will assume that the CDOC's eligibility criteria are mandatory and sufficiently specific to create a liberty interest. Turning to the second step of the analysis, however, the Court finds that plaintiff has not shown that Mr. Roberts' actions deprived plaintiff of adequate process in relation to a liberty interest. *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be

established.") (citations omitted). As discussed above, the April 2014 Memorandum constituted an attempt by Mr. Roberts to make plaintiff eligible for HCV treatment by allowing him to enroll in the necessary drug and alcohol program at Kit Carson. Plaintiff presents no evidence or cognizable argument that this action was to the detriment of his liberty interests or that Mr. Roberts otherwise failed to ensure that plaintiff had access to a required program.

With respect to the plaintiff's contention that he was not "screened for Hepato Cellular Cancer (HCC) every six-month's per-protocol" [sic] and did not receive other screening such as "Esophageal Varices for those suspected of having cirrhosis," the Court finds that he has not shown that the CDOC's HCV treatment policy granted him a liberty interest in such screening. Docket No. 206 at 5. The HCV treatment policy states that the "optimal screening strategy" for inmates with "chronic HCV infection and cirrhosis [who] are at greater risk for HCC . . . is uncertain." Docket No. 166-1 at 15. It goes on to state that "screening for HCC, with a liver ultrasound annually and serum alpha-fetoprotein every 6 months, should be considered for offenders with cirrhosis and HCV infection." *Id*. Similarly, the HCV treatment policy states that an "[e]sophagogastroduodenoscopy (EGD)" to screen for esophageal varices "should be obtained once in any offender with known cirrhosis and in those with suspected cirrhosis." *Id*. The language of these screening policies does not use explicitly mandatary language based on clearly defined substantive predicates of the types that have been held to create liberty interests. *See Abbott*, 13 F.3d at 1443; *Steffey*, 461 F.3d at 1221 (10th Cir. 2006) ("[A] deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural

due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484)). Rather, these policies maintain medical discretion about what screening is appropriate based on an inmate's medical situation. *See* Docket No. 166-1 at 15, ¶¶ 6-7. Moreover, there is no evidence in the summary judgment record that plaintiff was suspected of having cirrhosis during the period at issue, 2014. *See* Docket No. 179 at 4-6.[4]

### 3. Unobjected to Rulings

As for the unobjected to portions of the Second Recommendation, the Court has reviewed those portions of the Second Recommendation to satisfy itself that there is "no clear error on the face of the record."[5] Fed. R. Civ. P. 72(b), Advisory Committee Notes. The Court finds no clear error with respect to the magistrate judge's other recommendations and will accept them. Accordingly, the Court will grant Mr. Roberts' motion for summary judgment.

### C. Order to Show Cause

The Court's September 4, 2018 order to show cause noted that plaintiff had "not filed a proof of service" for the unserved defendants and ordered plaintiff to show cause

---

[4] With his objection, plaintiff filed a letter from a James R. Burton, Jr., MD, dated November 14, 2017, stating that, based on review of plaintiff's "records," there was "evidence of cirrhosis (low platelets, elevated bilirubin, low albumin)." Docket No. 206 at 11. He referred to this document, but did not file it, with a supplement to his response to defendants' motions. *See* Docket No. 180. Regardless, it does not show that Mr. Roberts was aware of any suspicion that plaintiff had cirrhosis in 2014.

[5] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

why they should not be dismissed pursuant to Fed. R. Civ. P. 4(m). Docket No. 209. Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Plaintiff's September 14, 2018 "Objection" discusses his allegations against the unserved defendants but does not discuss his failure to serve them or otherwise demonstrate good cause warranting an extension beyond the ninety-day limit for service, which has long passed. *See* Docket No. 214. The Court finds plaintiff has not shown good cause for an extension of time to serve the unserved defendants and, therefore, the Court must dismiss the claims against them without prejudice pursuant to Fed. R. Civ. P. 4(m). *See Smith v. Glanz*, 662 F. App'x 595, 598 (10th Cir. 2016) (unpublished) (finding dismissal appropriate where, after an order to show cause issued, a pro se inmate failed to show good cause for not serving the defendants within the time limit prescribed by Fed. R. Civ. P. 4(m)).

**D. Challenges to the Protective Order**

In light of the Court's resolution of all of plaintiff's claims, plaintiff's challenges to the magistrate judge's protective order are moot. The Court will overrule plaintiff's objections and deny as moot his motion for review. *See* Docket Nos. 200, 201, 211.[6]

---

[6] Even if plaintiff's challenges to the protective order were not moot, plaintiff fails to show that he sought the requested documents while discovery was allowed or to show good cause to reopen discovery. *See* Docket No. 113 (ordering discovery to close August 4, 2017); Docket No. 185 (plaintiff's discovery requests filed January 18, 2018); Fed. R. Civ. P. 16(b)(4).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 204] filed on July 17, 2018 is **ACCEPTED**. It is further

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 205] filed on July 19, 2018 is **ACCEPTED**. It is further

**ORDERED** that the Motion for Summary Judgment From Defendants Susan Tiona, Karen Mitchell, David Gross, Richard Madrid, and Desiree Andrews [Docket No. 157] is **GRANTED**. It is further

**ORDERED** that the Motion for Summary Judgment [Docket No. 166] filed by defendant Doug Roberts is **GRANTED**. It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 4(m), plaintiff's claims against defendants Jerry Steele, Patricia Headley, L. Mortin-Earl, and Kathy M. Wiley, NP, are **DISMISSED** without prejudice. It is further

**ORDERED** that Plaintiff's Rebuttal to Defendants [sic] Objections/Responses to Plaintiff's Request for Production of Documents [Docket No. 200] and Plaintiff's Objection to Defendants [sic] Protective Order Regarding Plaintiff's Production of Documents [Docket No. 201], construed as objections to the magistrate judge's February 23, 2018 Protective Order [Docket Nos. 189-190], are **OVERRULED** as moot. It is further

**ORDERED** that plaintiff's Motion for Review of Plaintiff's Rebuttal to Defendants [sic] Objection to Plaintiff's Request for Production of Documents (P.O.D.) on

03/23/2018, Also Plaintiff's Objection to Defendants [sic] Protective Order Regarding His Production of Documents Motion on 03/23/2018 [Docket No. 211] is **DENIED** as moot.  It is further

    **ORDERED** that judgment shall enter against plaintiff Mark Walter Paulsen and in favor of defendants Susan Tiona, Karen C. Mitchell, David R. Gross, Richard Madrid, Desiree Andrews, and Doug Roberts.  It is further

    **ORDERED** that, within 14 days of the entry of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court.  It is further

    **ORDERED** that this case is closed.

    DATED September 21, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge